(Reap. Dec. 9674)

F. W. WOOLWORTH CO. v. UNITED STATES

Entry No. 3172.

(Decided April 19, 1960)

*Sharretts, Paley & Carter* (*Howard C. Carter, Joseph A. Goodyear,* and *Richard F. Weeks,* for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* trial attorneys), for the defendant.

LAWRENCE, Judge: This appeal for a reappraisement involves the proper dutiable value of certain serving trays and bread baskets exported from Germany.

The position of plaintiff is that the entered values of said merchandise, less the amounts added under duress, are the proper applicable values, predicated on the basis of export value, as that value is defined in section 402(d) of the Tariff Act of 1930 (19 U.S.C. § 1402(d)).

There is no oral testimony of record. There was received in evidence on plaintiff's behalf an affidavit of Hans Hubner, a partner in the firm of Schlundt & Co. of Coburg, Germany, seller of the instant merchandise (collective exhibit 1), and, as plaintiff's collective exhibit 2, the consular invoice, together with three attached sheets which form part of the official entry papers. As defendant's collective exhibit A, there was received in evidence a report of Michael Balla, American vice consul, Economic and Commercial Section, Munich, Germany, together with accompanying documents identified as exhibits A through I.

The affidavit of Hans Hubner, received in evidence as plaintiff's collective exhibit 1, after setting forth Hubners' familiarity with the merchandise in issue, contains the following statements:

This merchandise was offered for sale for exportation to the United States unconditionally and without any restrictions as to disposition, use, resale price or any other restrictions whatsoever and the price did not vary with the quantity purchased. The merchandise was freely offered for sale and sold at our factory at Coburg and the factory was the only market in Germany for the purchase and sale of this merchandise. The purchaser or his agent ordi-

narily accepts delivery of the merchandise at the factory and all charges arising thereafter are for the account of and are paid for by the purchaser. At times, for the convenience of the purchaser, I offer this merchandise and sell it on an f.o.b. seaport basis and these prices are determined by adding the inland freight and other charges to the ex-factory packed price. On November 17, 1951, the date when this merchandise was exported, the following merchandise was freely offered for sale and sold, as explained in the preceding paragraph, at the following prices packing included:

| Item No. | Description | For home consumption | For export to U.S. |
|---|---|---|---|
| 707/524–3 | Serving trays | DM 62.93 per doz. | $15.00 per doz. |
| 524/4 | " | DM 71.18 " " | 17.16 " " |
| 524/5 | " | DM 80.54 " " | 19.20 " " |
| 627/3 | " | DM 55.38 " " | 13.20 " " |
| 627/4 | " | DM 64.44 " " | 15.36 " " |
| 707/224 | Bread baskets | DM 26.94 " " | 6.43 " " |
| 707/225 | " | DM 26.94 " " | 6.43 " " |
| 707/627–5 | Serving trays | DM 73.00 " " | 17.40 " " |

The aforesaid prices include inland freight and other charges which on this shipment amounted to $47.26.

The foregoing prices were freely offered to all purchasers unconditionally and without any restrictions as to disposition, use, resale price or any other restriction whatsoever and the price did not vary with the quantity purchased whether the merchandise was sold for home consumption or for exportation to the United States. No sales of this merchandise were made for home consumption or for exportation to the United States, but the merchandise was freely offered during this period. As evidence thereof, I attach five (5) invoices covering shipments to Canada, England and Switzerland which were made at or about that time at the same prices. These invoices were taken from the records of my company and I know that they are correct and truly represent the prices at which the merchandise was freely offered for sale and sold.

I believe that some of the confusion that has arisen with respect to the correct values of this merchandise results from the manner in which the invoice accompanying consular invoice 3119 was prepared. One of the items (707/524–3) was packed in cases containing one dozen of this item together with ½ dozen each of six other items. I showed the price in deutschmarks for one dozen of item 707/524–3 because one dozen was packed in the case, while for the balance of the items (where ½ dozen was packed in the case) I showed the price in deutschmarks for ½ dozen articles. However, in the next column of the invoice, I showed the price in United States dollars for one dozen of each of the items. Finally, in the last column of the invoice, I showed the proper extension for the quantities of the respective items contained in the case in United States dollars. In other words, the second column of the invoice is the only place where I showed the prices per dozen for each of the articles. The prices shown in deutschmarks and the extension in United States dollars is the price for one dozen in the case of item 707/524–3 and for ½ dozen in the case of the balance of the items.

It is axiomatic that for a plaintiff to prevail in an appeal for a reappraisement in an instance such as is presented here it is incumbent

upon it to produce evidence to prove the action of the appraiser was erroneous and to support a finding of foreign or export value, whichever is higher, within the statutory definitions contained in section 402 of the Tariff Act of 1930, or as amended by the Customs Administrative Act of 1938. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495.

In the instance of foreign value, there must be a showing of free offers for sale for home consumption to all purchasers in the principal markets of the country from which exported, and in the case of export value, evidence must be produced of free offers for sale to all purchasers in the principal markets of the country from which exported for exportation to the United States, applicable in each instance to such or similar merchandise to that in controversy.

The only evidence of this character offered by plaintiff is the statement contained in the affidavit of Hubner (collective exhibit 1), that—

* * * No sales of this merchandise were made for home consumption or for exportation to the United States, but the merchandise was freely offered during this period. As evidence thereof, I attach five (5) invoices covering shipments to Canada, England and Switzerland which were made at or about that time at the same prices. These invoices were taken from the records of my company and I know that they are correct and truly represent the prices at which the merchandise was freely offered for sale and sold.

It is the opinion of the court that such evidence falls far short of the requirements. In the first place, the invoices evidencing sales of such merchandise to Canada, England and Switzerland are wholly immaterial to a determination of dutiable export value of the instant merchandise. *United States* v. *H. W. Robinson & Co.*, 25 C.C.P.A. (Customs) 395, T.D. 49484. Moreover, the mere statement of affiant that the merchandise was freely offered for sale does not constitute such affirmative proof of offers as would substantiate a finding by the court that the claimed values were the proper dutiable values. It is a mere declaration of an essential ultimate fact in issue such as was held in the *Brooks Paper Company* case, *supra*, not to constitute substantial evidence. See also *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705.

Plaintiff not having overcome the presumption of correctness attached to the appraiser's action, the appraised values stand as made.

Defendant, in its brief, contends that the proper values of the serving trays and bread baskets in issue are those found by the appraiser or certain alternative values in some instances which are reflected in the following tabulation which was set forth in defendant's brief:

| Mdse. & No. | Entered Value (A) | Appraised Value (B) | Govt. claimed value on record |
|---|---|---|---|
| Serving Trays: | | | |
| No. 707/524/3 | $15.00 | $25.68 | $25.68 |
| "  "  " /4 | 17.16 | 28.56 | 28.56 |
| "  "  " /5 | 19.20 | 31.44 | 31.44 |
| "  " 627/3 | 13.20 | 19.92 | 18.24 |
| "  "  " /4 | 15.36 | 24.24 | 22.56 |
| "  "  " /5 | 17.40 | 27.12 | 25.44 |
| Bread Baskets: | | | |
| No. 224 | 6.43 | 8.57 | 8.64 |
| " 225 | 6.43 | 8.57 | 8.64 |

All values in U.S. dollars per dozen.

(A) On entry the importer deducted non-dutiable charges of $47.26 for inland freight and $2.50 for consular fee, and then added back, under duress certificate the above $47.26 for inland freight, and also added $41.50 for 4% turnover tax.

(B) The appraised values were all less 20%, less 2%, less inland freight of $47.26, packed.

It would appear from the record before the court that the alternative values claimed by defendant are likewise not supported by substantial evidence. Whereas subexhibit "G" attached to defendant's collective exhibit "A," which is principally relied upon by defendant in support of its contention, purports to be a pricelist, there is no showing of the effective date of said list as to whether or not it was applicable on or about the time of the instant importation, and there is no evidence that said pricelist was ever published or used, or that actual offers were made pursuant thereto. The only statement relating to this subexhibit "G" appearing in the report of American Vice Consul Bella is—

* * * Also attached, marked Exhibit "G," is one copy of the manufacturer's price list for trays. This price list has not previously been submitted to the Bureau of Customs.

Other pricelists accompanying defendant's collective exhibit "A," namely, subexhibits "B," "C," "D," "H," and "I" are similarly lacking in probative value.

From the record presented in this case, the court finds as facts:

1. The merchandise in issue consists of serving trays and bread baskets exported from Germany.

2. The evidence adduced by plaintiff and by defendant fails to establish that the appraised values are erroneous and that other values claimed by both parties are correct.

As matters of law, the court concludes:

1. That the value returned by the appraiser, which is presumptively correct, has not been overcome.

2. That the proper value of the merchandise in controversy is the value found by the appraiser.

Judgment will issue accordingly.