(R.D. 11164)

KAY PEE IMPORT EXPORT CO. *v.* UNITED STATES

Entry Nos. 1004296 ; 719225 ; 899062.

(Decided April 13, 1966)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* and *Murray Sklaroff* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan*, *Glenn E. Harris*, and *Harvey A. Isaacs*, trial attorneys), for the defendant.

RICHARDSON, Judge: These consolidated reappraisement appeals involve the question of the proper dutiable value of merchandise on the final list of the Secretary of the Treasury in T.D. 54521, and consisting of nonpareil candy in plastic containers, imported at New York from West Germany and appraised on the basis of cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402a(f), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), at deutsche mark 1.739 per box of varying number of pieces, net packed. The plaintiff-importer contends that the proper dutiable value of the involved merchandise is deutsche mark 1.62 (39 cents) per box of 60 pieces, under either export value, as defined in 19 U.S.C.A., section 1402(d) (section 402a(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), or under the cost of production basis of valuation as defined in section 1402(f).

The plastic containers, which were valued separately in the appraisement, are in the shape of toy-like helicopters, aeroplanes, ships, motorcars, and cannons. As imported, each candy-filled container constitutes one piece. In R60/20308, the merchandise was exported on July 3, 1959, and the shipment contained 100 cartons of just the

motorcar variety of container filled with nonpareils, packed 60 pieces to the box and 36 boxes to the carton. Appraisement of this shipment, covered by entry No. 719225, was per box, net packed. In R60/18741, the merchandise was exported on December 18, 1959, and the shipment contained 100 cartons of all five varieties of container filled with nonpareils, packed 24 pieces to the box and 24 boxes to the carton. Appraisement of this shipment, covered by entry No. 899062, was per box, net packed, also. In R61/22872, the merchandise was exported on March 29, 1960, and the shipment contained 200 cartons of all five varieties of container filled with nonpareils, packed 12 pieces to the box and 24 boxes to the carton. Appraisement of this shipment, covered by entry No. 1004296, was per box of 12 pieces, net packed.

In its contentions before this court, the plaintiff-importer relies upon the presumption of correctness of the appraisement to the extent that the appraiser found foreign and United States values for merchandise such as or similar to that at bar to be nonexistent. The principal question to be determined by this court then, is which of two alternative bases of value, namely, export value or cost of production, is the proper basis for valuing the subject merchandise. The pertinent statutory definitions of value read as follows:

[Sec. 1402.   Export value.]

(d)   \* \* \* The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*          \*          \*          \*          \*          \*          \*

[Sec. 1402.   Cost of production.]

(f)   \* \* \* For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1)   The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2)   The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3)   The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The evidence before the court is entirely documentary, and consists of an affidavit dated December 17, 1963, of the West German manufacturer of the plastic container, one Hermann Wader (plaintiff's exhibit 1), and an affidavit dated February 19, 1964, of the president of the importing firm, one Jan Pachl (plaintiff's exhibit 2), submitted in evidence on behalf of the plaintiff. On behalf of the defendant, there were received in evidence two reports of customs agents (defendant's exhibits A and B), and an Analysis of Report of Inquiry (defendant's exhibit C). In exhibit 1, Hermann Wader, after stating his engagement in the business of manufacture of the plastic container here involved at Radevormwald, Germany, his sole ownership of the business, familiarity with the business, and his acquaintanceship with the plaintiff-importer, and after identifying his merchandise as being identical to merchandise which he has sold to the plaintiff and others for export to the United States, stated:

That he has known and dealt with the firm of Kay Pee Import Export Co., Ltd. since early in 1958, at which time, and until the latter part of 1959, although he freely offered this merchandise to all purchasers for export to the United States, because of his inability to produce these items in large quantities, the firm of Kay Pee Import Export Co., Ltd. was able to and did purchase his entire production. However, this was without any agreement of exclusivity.

The affiant goes on to state that he increased his production capacity and since January 1, 1960, he has in fact offered and sold the merchandise without restrictions of any kind to all purchasers in Radevormwald, the principal market in West Germany, for export to the United States at the price of 39 cents per box of 60 pieces of candy-filled containers inclusive of export packing and inland freight, which price does not vary with the quantity. There follows a listing of five sales made to firms other than the plaintiff at various times in 1960, setting forth invoice dates, names of purchasers and quantities purchased. Mr. Wader further states that to his knowledge such or similar merchandise, or merchandise of the same general character, has never been offered for sale for domestic consumption in Germany nor for export to the United States by any other manufacturer.

The affidavit of Hermann Wader is concluded with a statement of the cost of production of the merchandise which he says is based on figures taken from books and records of the business maintained under his personal supervision and control and which were in effect since January 1, 1958. These figures are set forth as follows:

|  | In DM per box |
|---|---|
| Cost of production | |
| Material and Plastic | 0. 66 |
| Labor | 0. 52 |
| General Expenses | 0. 14 |
| Profit | 0. 12 |
| Packing | 0. 15 |
| Total Cost of Production | 1. 53 |
| Extra—Inland Freight | 0. 09 |
| TOTAL Invoice Price (equivalent of 39¢ per box) | DM1. 62 |

In exhibit 2, affiant Jan Pachl states, among other things, that the price paid by the plaintiff during the period 1958 through March 1960 for merchandise (such as and including that at bar) manufactured by and purchased from Hermann Wader of Radevormwald, West Germany, was approximately 39 cents per box of 60 pieces, net packed, which price included export packing and inland freight, that at no time did he have an exclusive agreement with Hermann Wader for the purchase of such merchandise, that at no time was he able to find any other manufacturers of this merchandise in Western Germany, and that the price paid did not vary with the quantity purchased.

In exhibit A, Customs Representative Heinz L. Herz, reports the results of an interview with Hermann Wader at Mr. Wader's offices on June 16, 1959. The report, dated June 26, 1959, states among other things, that Mr. Wader stated that the relationship between the manufacturer and the importer Kay Pee Export Import Co., Ltd., is that of buyer and seller, that there is an oral agreement between them restricting sales for exportation to the United States solely to the plaintiff-importer, that such or similar novelty items would not be sold or offered to other United States buyers, that the plastic containers are manufactured by Mr. Wader, and that the candy is purchased by Mr. Wader from a confectioner and then is packaged by the Wader firm.

The report sets forth cost of production figures per carton of 60 pieces which were compiled from Mr. Wader's records. These figures are as follows:

| | | |
|---|---|---|
| 1) | Cost of plastic container | DM0. 84 |
| 2) | Cost of cardboard piece to seal candy into plastic container | 0. 068 |
| 3) | Cellulose tape to hold cardboard piece over opening in container | 0. 03 |
| 4) | Inner carton | 0. 22 |
| 5) | Outer carton | 0. 04 |
| 6) | Labor | . 24 |
| 7) | Candy | . 21 |
| | TOTAL | DM1. 648 |

The report goes on to state that the labor cost listed as item 6 above represents the cost of filling and sealing the plastic container, and packing the containers into outer cartons, that two thirds of this cost is incurred in the filling and sealing of the plastic containers, the remainder representing the cost of packing into outer cartons, that inland freight and f.o.b. charges of about DM0.05 per 60 pieces are also included in this cost calculation and are reflected by the addition of a small safety factor to the costs shown above.

In the Herz report, Mr. Wader is also said to have stated that the costs relating to the manufacture of the plastic container are computed as follows:

| | |
|---|---|
| Material | DM0.36 |
| Wages | .20 |
| Waste | .04 |
| Overhead | .12 |
| Profit | .12 |

that the firm calculates profit solely on the plastic container, the amounts shown for the cost of candy, packing, labor, etc., including no profit margin, that the firm receives a tax rebate on the materials used amounting to 3 percent of the f.o.b. selling price, which is treated as an extra profit, and that this merchandise is sold only to Kay Pee at the same price in United States currency irrespective of whether the shipment goes to the United States or Canada.

In exhibit B, Customs Representative J. C. Fawcett, reports the results of interviews with Mr. Pachl and E. Brusadin, the accountant, at the offices of Kay Pee in Montreal, Canada, on October 20 and 22, 1959, on the subject of possible false invoicing practices.   Parts of this report, dated October 23, 1959, pertinent to the issues before the court, read as follows:

. . . Mr. Pachl said that he visits Germany at least four times each year and, in his discussions with the manufacturers and his own calculations based on his previous experience in the manufacturing business in Czechoslovakia, the cost of the plastic containers is no more than $33\frac{1}{3}\%$.

Mr. Pachl was asked whether he had instructed the manufacturers in Germany to invoice the merchandise to show cost of the plastic containers at lower than the actual cost. He stated that he had not given any such instructions; that he had no doubt told them that he had conferred with the U.S. appraiser and that their breakdown of ⅓ for the plastic containers was agreeable to him. He stated further that this percentage is a true statement; that none of the manufacturers in Germany had told him that the percentage of cost of the containers was higher and, furthermore, if any higher percentage figures have been given his calculations are in error as all of the manufacturers of similar items in Germany are selling at prices that are similar.

His statements are supported by the copies of foreign reports submitted, copies of which you forwarded to this office. [The Supervising Customs Agent at New York City] Report dated June 26, 1959, file 3–106/927, covering inquiry made at the firm ARTUR HAMMER, Ludenscheid, West Germany, shows percentages for the airplane, cocktail shaker, and sputnik of about 34, 28, and 34%, respectively, and for the flutes about 39%, which item was not imported by Kay Pee.

The cost breakdown in report dated June 26, 1959, file 106/928 covering similar merchandise manufactured by Plast-Vertrieb, Dusseldorf, Germany, shows the plastic containers at a cost of DM0.32 plus finishing of DM0.06 equaling about 25% of the total cost.

The report dated June 26, 1959, file 3–106/934 covering inquiry at HERMANN WADER, Radevormwald, Germany, shows a percentage of about 51% for the plastic container which is considerably higher than that of the other manufacturers; however, this is accounted for as this manufacturer has charged all overhead and added his profit to the container prior to filling and packing.

\* \* \* \* \* \* \*

. . . Mr. Pachl stated that he agreed to buy the merchandise for $.335 per box of 60 pieces plus export packing $.045 per box and inland freight from factory to Bremen or Hamburg of $.02 per box.

Mr. Pachl stated that all transportation charges to the German port are paid by the manufacturer and he does not receive any advice as to the cost of transportation in Germany. He stated that the actual cost of trucking would not amount to $.02 per box but that this amount also covers incidental costs such as preparation of bills of lading, telephone calls to arrange trucking and shipping space, wharfage fees, etc.

Exhibit C evidences, among other things, the breakdown of figures used by the appraiser in making his return herein under the cost of production basis of valuation. These figures are shown in the exhibit as follows:

Cost of a box of 60 pcs.

Cost of Container:

|  |  |  |
|---|---|---|
| Material | DM0. 36 | |
| Labor | 0. 20 | |
| Overhead | 0. 12 | |
| Profit 8% | 0. 0544 | |
|  | 0. 7344 | |
| Plus 3% Rebate Tax | . 022 | 0. 7564 |
| Candy | 0. 21 | |
| Labor | 0. 24 | |
| Packing | 0. 358 | |
| Plus 10% Overhead | 0. 0808 | |
| Profit 8% | 0. 0652 | |
|  | 0. 9540 | |
| Plus 3% Rebate Tax | . 0286 | . 9826 |
|  |  | 1. 7390 |

The foregoing constitutes the evidence before the court. Insofar as it relates to export value of merchandise shipped from West Germany in 1959, and covered in appeals R60/20308 and R60/18741, the evidence is conflicting on the matter of whether or not there was an exclusivity of dealings between the manufacturer and the plaintiff-importer, and concerning the enforcement of any such restricted course of dealings. As the court views the instant record, however, it is not necessary for the court to attempt to resolve this particular conflict of evidence. Even if, as plaintiff contends, there was no exclusive arrangement between the manufacturer and the plaintiff-importer concerning the exportation of the merchandise to the United States, there is no evidence before the court that the merchandise was freely offered to persons other than the plaintiff during the period of the involved exportations in 1959. The court is at a loss for understanding how the limited production capacity of the manufacturer during this 1959 period has anything to do with the free offering of the merchandise and the disclosure of evidence of such offers. Granted that through a series of fortuitous purchases, a small output might be more readily absorbed by a single purchaser than a large output, nevertheless, in the absence of a commitment of even such small output to the single purchaser, evidence of contemporaneous offers to other prospective purchasers, if such offers were made, should exist. The failure of exhibit 1 to set forth information regarding offers to other persons

during the 1959 period here involved renders the exhibit (insofar as the involved 1959 period is concerned) nothing more than a statement of an unsupported conclusion not amounting to substantial evidence of free offerings. See *F. W. Woolworth Co.* v. *United States*, 44 Cust. Ct. 666, Reap. Dec. 9674, and the cases cited therein on page 668. Since plaintiff has failed to otherwise establish by means of competent evidence an export value for merchandise covered by appeals R60/20308 and R60/18741, the merchandise of these appeals must be reappraised on the basis of their cost of production value.

As to the merchandise exported in 1960 and covered in appeal R61/22872, statements in exhibit 1 regarding contemporaneous sales and offers are more convincing. These statements are supported by a showing of a number of sales made to firms other than the plaintiff herein during 1960. And, even if, as defendant contends, the court is confined to a consideration of only the one sale which was consummated prior to the exportation of the merchandise at bar, which would mean only the first of the listed sales, still, the evidence of this single sale has probative value as evidence that the merchandise was offered to persons other than the plaintiff-importer at or about the time of the exportation of the merchandise at bar. The uncontradicted evidence establishes that the market price for this merchandise was stable throughout the period here involved. Moreover, defendant has adduced no evidence tending to disqualify this sale as evidence of a freely offered export price. And the evidence contained in exhibit A is remote and has no such disqualifying effect on offers and sales made more than 6 months after the transactions referred to in the exhibit. Therefore, taking into consideration the statements in exhibit 1 and weighing it with the corroborating proof culminating in the sale on January 8, 1960, to a firm other than the plaintiff at the same price at which the involved merchandise was sold—a price which is shown without contraindication in the record to be stable during the period in question—the court is of the opinion that there is substantial evidence in the record supporting the claim for export value as to the 1960 exportation herein involved. And, inasmuch as a single qualified sale is sufficient to establish an export price (*United States* v. *Malhame & Co.*, 19 CCPA 164, 171, T.D. 45276; *Tropical Products Corporation* v. *United States*, 33 Cust. Ct. 508, Reap. Dec. 8320), it follows that the merchandise of R61/22872 must be reappraised on the basis of export value at the unit value contended for by the plaintiff.

Returning to the matter of the cost of production value of merchandise covered in appeals R60/20308 and R60/18741, it will be observed that the evidence adduced by the parties, although stemming from the same source (books and records of the manufacturer Hermann Wader), is at variance with respect to the number of items includible

in the computation, and in some instances, the amount constituting a particular item of the computation. Inasmuch as the merchandise of these appeals was appraised on the basis of its cost of production value, as also was the merchandise of the companion appeal R61/22872, the appraiser's computations are presumed to be correct, and it is for the plaintiff to establish otherwise.

The court is of the opinion that the evidence of record falls short of rebutting the presumption of correctness attaching to the appraiser's computation of cost of production value herein. A significant difference between the computations here involved appears to be attributable to the fact that the plaintiff's calculations of general expenses and profit are predicated upon the cost experiences of the manufacturer of the merchandise at bar, whereas the figures comprising these elements in the appraisement are higher comparative figures based upon the allocation practices of other West German manufacturers of merchandise such as or similar to, or of the same general character as the merchandise at bar, and different from the practices employed by the manufacturer of the involved merchandise. It does not appear to be open to serious dispute that, where there is a field of manufacturers against whose cost experiences and practices the statutory cost of production is to be determined, all but comparative figures are preempted from consideration insofar as the elements of general expenses and profit are concerned, unless it is shown that such comparative figures are not available. Plaintiff's reason for offering evidence of the exporter's cost figures as to general expenses and profit in lieu of comparative figures appears to be based upon an assertion that other manufacturers of the type of merchandise here involved were nonexistent in West Germany. However, the court finds that the credible evidence as manifest in exhibit B is clearly to the contrary. And it appears that the comparative figures for the elements of general expenses and profit in the appraisement are in accordance with the evidence of cost allocations of other West German manufacturers as shown in exhibit B, in compliance with the statutory requisites in view of such evidence.

The bases for other differences in the involved cost of production computations are not so readily apparent, with the exception of the item of rebate tax which is added (to profit) in the appraiser's calculations, but omitted from plaintiff's calculations. But as to all of these other items, plaintiff has shown no reason why its figures should be adopted over those utilized in the appraisement, which to the court, appear to be more detailed and as accurate as the figures relied upon by the plaintiff.

There is, however, one factor in the appraisement which warrants clarification in the light of the evidence. As the court views the evi-

dence, the involved merchandise was bought and sold in units of 60 pieces to the box. The cost calculations adduced by both parties are also based upon a unit price of 60 pieces to the box. Hence, appraisement herein should be based upon a unit price of 60 pieces to the box. And this appears to be what the appraiser intended to use as the unit value according to exhibit C. There is no question but that appraisement of the merchandise of appeal R60/20308 "per box" was made in units of 60 pieces per box, if for no other reason than that the merchandise was packed and shipped in the same unit in which it was bought and sold. However, in R60/18741 the merchandise was packed 24 pieces to the box, and the appraisement here "per box" might easily be understood to apply to the merchandise as packed rather than as bought and sold. Such was clearly the case as to the merchandise of R61/22872, where (although not here involved in the question of cost of production in view of the court's finding as aforesaid) the merchandise was packed 12 pieces to the box and was appraised "per box of 12 pieces net packed." In any case, it is clearly not proper under the evidence here to value the merchandise on any unit basis other than units of 60 pieces to the box, and the court so holds.

Therefore, for the reasons given, the court finds as matters of fact:

1. That the merchandise herein consists of confectionery in plastic containers exported from West Germany between the dates of July 3, 1959, and March 29, 1960.

2. That the merchandise herein was appraised on the basis of cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402a(f), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

3. That at or about the dates of exportation of the involved merchandise prior to January 1, 1960, such or similar merchandise was not freely offered for sale in West Germany for home consumption, nor for exportation, nor in the United States for domestic consumption.

4. That on and after January 1, 1960, and up to and including the date of exportation of the merchandise the subject of appeal R61/22872, such merchandise was freely offered for sale to all purchasers in the principal market at Radevormwald, in West Germany, for exportation to the United States at a price of 39 cents per box of 60 pieces, net packed, which price did not vary with the quantity purchased.

5. That prior to January 1, 1960, and for a reasonable time prior to the dates of exportation of the merchandise the subject of appeals R60/20308 and R60/18741, the cost of production in West Germany of merchandise such as that covered by said appeals was deutsche mark 1.7390 per box of 60 pieces, net packed.

The court finds as matters of law:

1. That evidence does not rebut the presumption of correctness attaching to the basis of appraisement of the merchandise the subject of appeals R60/20308 and R60/18741.

2. That the proper basis for appraisement of the merchandise covered by appeals R60/20308 and R60/18741 is cost of production, as defined in section 1402(f), and such value is deutsche mark 1.7390 per box of 60 pieces net packed.

3. That the proper basis for appraisement of the merchandise the subject of appeal R61/22872 is export value, as defined in 19 U.S.C.A., section 1402(d) (section 402a(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), and such value is 39 cents per box of 60 pieces, net packed.

Judgment will be entered accordingly.