(R.D. 11235)

MIDLAND INDUSTRIAL COMPANY *v.* UNITED STATES

Entry No. 910011.

(Decided November 9, 1966)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

RAO, Chief Judge: The appeal for reappraisement listed above is brought to ascertain the proper dutiable value of certain imported steel sheets which were shipped from South Africa on or about December 28, 1959, and consigned to the plaintiff in New York. The merchandise was appraised at $7.0325 per hundred pounds, less ocean freight and insurance, on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Both parties agree that export value, as defined and amended, *supra*, is the proper basis of valuation, but plaintiff contends that the correct export value for the merchandise in question is the entered value, $5.30 per hundred pounds, f.o.b. port of South Africa.

The relevant portions of the statute involved in this appeal are set forth below:

[Sec. 402] (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The record in the instant appeal consists of the testimony of one witness, plus an affidavit, both introduced on behalf of plaintiff, together with the official papers, which were moved into evidence and deemed marked.

The lone witness was Mr. Sam F. de Vries, the sole proprietor and manager of the plaintiff company. In substance, the witness testified that plaintiff was in the business of exporting steel from the United States to the countries of Western Europe; that, as a result of a prolonged nationwide steel strike in this country in 1959, the supply of domestic steel was drastically curtailed and that plaintiff was forced to seek new sources of supply; that, on or about October 15, 1959, he personally contacted the steel brokerage firm of Harlow & Jones, Ltd., of London and purchased from it the steel sheets involved in the instant appeal; that said Harlow & Jones, Ltd., acted as plaintiff's agent in purchasing said steel sheets from the producer, the South African Iron and Steel Industrial Corp., Ltd.; that said steel sheets were not in existence prior to the date of purchase and that he furnished Harlow & Jones, Ltd., with the specifications as to size, quality, and quantity based upon an offer secured from the producer.

On cross-examination, Mr. de Vries stated that the steel strike forced plaintiff to purchase steel from English steel brokers and that plain-

tiff had to pay a higher price for the involved merchandise, the increase due, not to any difference in the size or quality of the merchandise, but, rather, to the broker's commission and profit of Harlow & Jones, Ltd. It was further revealed that a certificate of test and analysis issued by the South African producer, which is part of the official papers in evidence in this appeal, lists Harlow & Jones, Ltd., as the purchaser of the merchandise involved herein. Commenting on this fact, the witness stated that the designation of Harlow & Jones, Ltd., as purchaser is "of little practical value," since the producer usually placed the name of the broker or agent on the mill certificate even though it knew the name of the actual end user.

Plaintiff's exhibit 1 consists of the affidavit of Mr. Noel Charles Castle, who was, at the time in question, the sales manager of the producer, the South African Iron and Steel Industrial Corp., Ltd. Attached to and made a part of said affidavit is a schedule listing the sales of the producer during the last quarter of 1959 to the plaintiff and one other company whose name does not appear thereon. The affiant stated, *inter alia*, that, during the last quarter of 1959, the producer had a quantity of steel sheets available for sale and export to the United States and that said steel sheets were "such as the ones" his company exported to the plaintiff on "December 27/29, 1959." Other portions of this affidavit will be referred to in due course.

Since the parties are in accord that export value, as defined and amended, *supra*, is the proper basis for valuation of the involved merchandise, the sole issue presented here for determination is whether said export value is $7.0325 per hundred pounds, less ocean freight and insurance, as found by the appraiser, or $5.30 per hundred pounds, f.o.b. port of South Africa, as claimed by the plaintiff. So stated, several fundamental principles of customs jurisprudence must govern the resolution of this issue. Under the applicable statute, "the value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise." 28 U.S.C., section 2633. It is, therefore, axiomatic that a twofold responsibility devolves upon a plaintiff in a reappraisement action. To sustain his burden of proof and overcome the presumption of correctness, it is incumbent upon plaintiff, the party challenging the value as found by the appraiser, to show *prima facie* that the action of the appraiser was erroneous and to establish some other dutiable value as proper. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. Where export value is involved, this rule requires the importer to establish the usual wholesale quantities in which such or similar merchandise was freely sold or offered for sale to all purchasers in the ordinary course of trade in the principal markets of the country from which exported. Failing to

establish any of the statutory elements of export value constitutes a failure to meet the requisite burden of proof, and the value as found by the appraiser must stand. *United States* v. *Fisher Scientific Co., etc.*, 44 CCPA 122, C.A.D. 648.

After a careful examination of the record herein, the court is of the opinion that plaintiff has failed to sustain its evidentiary burdens.

In support of its claim that the appraisement was erroneous, plaintiff asserts that, aside from the price shown on the Harlow & Jones, Ltd., invoice, there is no other evidence of record tending to support the appraised value. In this connection, plaintiff refers the court to the case of *United States* v. *Manahan Chemical Co., Inc.*, 24 CCPA 53, T.D. 48333, as standing for the proposition that an invoice price alone is insufficient evidence upon which to predicate a finding of export value. In the *Manahan* case, *supra*, the Court of Customs and Patent Appeals noted that "* * * an invoice, under certain circumstances, may be considered in the appraisal of merchandise, but an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise." While this court is in full accord with this pronouncement of our appellate court, certain facts in *Manahan* make it inapposite to the disposition of the instant appeal. Of primary import is the fact that *Manahan* was a proceeding brought to review an appraisement made pursuant to an antidumping order issued under section 201 of the Antidumping Act of 1921 and that orders issued pursuant to said act were *not* clothed with a statutory presumption of correctness. Thus, the above remarks of Judge Lenroot about invoice prices must be read in this light. But in the instant situation, as previously noted, current law provides that the appraiser is presumed to have correctly determined the value of the merchandise and the Government is not required to justify his action *unless and until* plaintiff has established a *prima facie* case. Aside from the bare allegation of error in plaintiff's brief, the record is devoid of any affirmative proof in this regard.

Assuming but not deciding that the appraiser failed to comply with the provisions of the export value statute, in the opinion of this court, there is not a scintilla of probative evidence tending to establish the claimed value as proper. For this purpose, plaintiff relies chiefly upon the affidavit of Mr. Castle, plaintiff's exhibit 1, the material portions of which are set out below:

5. That he knows from the records of his company and from his own personal knowledge by virtue of his duties, that during the 4th quarter of 1959, beginning October, 1959, and ending December 31, 1959, *that his company willingly offered for sale or sold without restraint, restriction or interference of any kind quantities of hot rolled steel coils and hot rolled steel sheets for exportation to the United States at the specified prices*, at, on or about the dates of exportation

which are specified under the column "Bill of Lading" recited in the schedule attached hereto * * * and said hot rolled steel coils and hot rolled steel sheets were such as the ones his company exported to the Midland Industrial Company of New York City, N.Y., U.S.A., on December 27/29, 1959.

\* \* \* \* \* \* \*

7. That he knows of his own knowledge by virtue of his duties, that the sales by his Company specified in the schedule attached hereto and which is made a part of this affidavit, of hot rolled steel coils and hot rolled steel sheets for export to the United States *were made in the usual wholesale quantities and in the ordinary course of trade.*

8. That he knows from the records of his company and from his own knowledge by virtue of his duties, that the prices specified in the schedule attached hereto and which is included and part of this affidavit for hot rolled steel coils and hot rolled steel sheets were the only prices charged for hot rolled steel coils and hot rolled steel sheets during the 4th quarter of 1959, beginning October 1st, 1959, and ending December 31, 1959, and no discounts and no restrictions accompanied any of the sales specified in that attached schedule which is part of this affidavit, for export to the United States during this period. [Italics supplied.]

A close examination of this affidavit in the light of prevailing authority reveals that the affiant has failed to recite "evidentiary" as distinct from "ultimate" facts. Our appellate court dealt with this very dichotomy in the case of *Brooks Paper Company* v. *United States, supra,* wherein Judge Johnson, writing for the court, noted that:

* * *"Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. * * * Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. * * * The ultimate facts are the *issuable* facts without proof of which plaintiff cannot recover. * * *

\* \* \* \* \* \* \*

* * * This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [Italics quoted.]

In my opinion, this affidavit is entitled to little, if any, weight in the disposition of this appeal. The affidavit is couched in terms close to or identical with the export value statute, as is evident from a reading of the italicized portion of paragraph 7 quoted above. No attempt was made by the affiant to set forth by evidentiary facts what constituted "such or similar merchandise," "the usual wholesale quantities" or " the ordinary course of trade" as those terms are employed in section 402(b), as modified, *supra.* In addition, the affiant's state-

ment in paragraph 5 of the affidavit "that his company willingly offered for sale or sold without restraint, restriction or interference of any kind, quantities of hot rolled steel coils or hot rolled steel sheets for exportation to the United States at the specified prices * * *" constitutes nothing more than the affiant's conclusion as to an issuable fact and is not substantial evidence of free offering to all purchasers in the principal markets of the country of exportation within the statutory intendment. *F. W. Woolworth Co.* v. *United States*, 44 Cust. Ct. 666, Reap. Dec. 9674. If this court were to attach any great weight to the statements contained in plaintiff's exhibit 1, it would permit an importer to usurp its function by deciding, by affidavit, those very issues which the court is enjoined by law to decide. *Brooks Paper Company* v. *United States*, *supra*. The testimony of Mr. de Vries failed to fill the void left by the affiant's bare conclusory averments and, moreover, he was not even qualified to testify about export value.

In reaching this conclusion, I am not unmindful of this court's decision in *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311, modified in 42 Cust. Ct. 558, Reap. Dec. 9345. In *Luria*, the court was called upon to deal with an affidavit that averred, *inter alia*, that the price of the merchandise did not vary with the quantity sold. Where this is the case, no question of usual wholesale quantity can arise. *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093. Accordingly, "a statement by an affiant to that effect is one which, not being dependent upon interpretation of facts or evaluation of sales, is itself a fact, not a conclusion, to which a qualified witness is competent to attest, without the necessity of providing corroborative evidence." *Luria Steel & Trading Corp. et al.* v. *United States*, *supra*, at page 485. While the court is in full accord with the principles announced in *Luria* and the cases cited therein, certain fundamental factors serve to distinguish *Luria*, thus rendering it inapposite to the decision of this case. The affiant herein, Mr. Castle, has not averred that the price of the merchandise did not vary with the quantity sold, as was the case in *Luria*. Rather, he has merely stated that "the prices * * * remained constant *for any given* size or quantity * * *" [emphasis added], the meaning of which is vastly different from the statement in the *Luria* case, *supra*.

Moreover, the record is barren of proof that the sale of steel sheets to the unidentified other purchaser listed on the schedule annexed to plaintiff's exhibit 1 was a sale of "such or similar merchandise" or that such sale accorded with the "ordinary course of trade." *United States* v. *Malhame & Co.*, 19 CCPA 164, T.D. 45276.

In *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, the court established the criteria for determining "similarity" of merchandise for valuation purposes. "[I]f goods are made

of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402(b)." In the instant appeal, no affirmative evidence has been adduced to show this statutory similarity. In fact, the record tends to support the opposite conclusion. Mr. de Vries testified that the steel sheets involved herein were not in existence at the time he purchased them from Harlow & Jones, Ltd., and that said merchandise was made according to his specifications. This fact, when coupled with the fact that a comparison of the involved steel sheets with those the subject of the sale to the unidentified other customer reveals a great disparity in both price and dimensions between them, would tend to show that the requisite similarity has not been established.

Plaintiff having failed to establish that the appraised value for the imported steel sheets was erroneous and, in addition, having failed to present substantial evidence to show that the claimed value is correct, the appraised value must, therefore, be sustained.

On the basis of this record and for all of the reasons hereinabove set forth, the court makes the following findings of fact:

1. That the merchandise in question consists of hot-rolled open hearth steel sheets, exported from Durban, South Africa, on December 28, 1959.

2. That said merchandise was appraised at $7.0325 per hundred pounds, less ocean freight and insurance, with all dutiable charges included therein, on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That there is no substantial evidence upon which to find any other value for said merchandise.

4. That the presumption of correctness attaching to the value as found by the appraiser with respect to the merchandise involved herein has not been overcome.

The court, therefore, concludes as matters of law:

1. That the proper basis of appraisement of the imported steel sheets is export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That such value is the appraised value.

Judgment will be entered accordingly.