(R.D. 11288)

TIME DISTRIBUTORS, INC. *v.* UNITED STATES

Entry No. 8403, etc.

(Decided April 4, 1967)

*Walter E. Doherty, Jr.*, for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Avram Weisberger* and *Irving A. Mandel*, trial attorneys), for the defendant.

RAO, Chief Judge: The merchandise involved in these appeals for reappraisement, consolidated for trial, consists of ladies' and gentlemen's wristwatch cases imported from Switzerland in November and December 1960. The merchandise was exported by Bermi Watch S.A. of Morbio Inferiore, Switzerland, to the purchaser, the plaintiff herein. The ladies' wristwatch cases were invoiced and entered at 1.65 Swiss francs per case, less 5 percent discount, and the gentlemen's at 2.50 Swiss francs per case, less 5 percent discount. The former were appraised at 2.25 Swiss francs per case, less 5 percent discount, and the latter at 5 Swiss francs per case, less 5 percent discount.

Plaintiff claims that the export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the correct basis for determining the value of the merchandise and that such values are the invoiced and entered values. Defendant claims that constructed value, as that value is defined in section 402(d) of said tariff act, as amended, is the correct basis of valuation and that such values are the appraised values. The parties are in agreement that said merchandise is not identified on the

Final List published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

At the trial, Daniel Shoostine, president and treasurer of the plaintiff corporation, testified that he had visited Switzerland at least once a year since 1959 for the purpose of buying wristwatches. In January or February 1960, he visited the Bermi Watch Co., located in the southern part of Switzerland, and the Triad Watch Co. and a firm known as Sperina, both located near a town called Bienne in another section of Switzerland. During those visits, he asked for prices and, if they were satisfactory, placed orders. He said that the three firms sold wristwatch cases which were the same with respect to size, quality, and material as those involved herein. The ladies' wristwatch case was a standard case, being a small round anodized aluminum case, which was not waterproof. The men's wristwatch case was octagon in shape and was water resistant. The movement was a standard 866 movement, which was the same no matter who made it. The witness stated that he had purchased from the three companies since 1959, but he was uncertain as to whether he had purchased from anyone except Bermi in 1960. He said that the prices asked by these firms for cases such as involved here were the same. He had purchased in quantities of 1,000, 3,000, and 5,000 and said those were usual wholesale quantities. He testified that the towns he mentioned were principal markets for the sale of these watches; that he did not know of too many factories in the southern part of Switzerland except Bermi, and that the larger markets were in the vicinity of Bienne. Actually, the factories were not places of manufacture but places where parts were assembled. He had been brought to these factories on his first visit by an "agent." Over the course of years, he had met other American purchasers, in these factories. While at Bermi's making these purchases, he had met a man from Spartan Watch Co., which is now out of business. At Sperina, he had met a Mr. Cooperman from New York who told him he was purchasing at the same prices and that they "were all right, they are in line."

Mr. Shoostine also testified that there were 40 or 50 other factories in Switzerland that produce similar watchcases and that they were selling to purchasers in the United States. On cross-examination he said he was unfamiliar with the prices at which those factories were selling similar watchcases, but on redirect he stated that he had had offers from them at about the same price. He was unable to state whether he bought at prices established on pricelists. He said the factories would sell to anyone who had good credit and an export symbol. He did not know what share of the market Bermi, Triad, and Sperina had.

Pursuant to stipulation, there was received in evidence subsequent to trial an affidavit of Pietro Bernasconi, president of Bermi Watch

S.A. It states that Bermi had sold watchcases to the plaintiff during November and December of 1960 and that the prices were as follows:

Ladies' watch cases (aluminum)
   Swiss francs 1.65 each

Men's watch cases (chromed)
   Swiss francs 2.50 each

    \*        \*        \*        \*        \*        \*        \*

A discount of 5% was allowed on each of the above prices.

The affidavit also states:

We further certify that such prices were our standard and usual prices in the usual wholesale quantities and in the ordinary course of trade at our factory in Switzerland during this period, our factory being a principal market in Switzerland for the sale of such watch cases for exportation to the United States. These prices were also offered to all persons who wished to purchase the same from us for exportation to the United States during the periods in question. Also during the period of exportation referred to herein, we sold watch cases of the same types to other customers in the United States, and sold the same at the same prices as shown herein.

Under well-established law, the value found by the appraiser is presumptively correct and the burden rests upon the challenging party to prove that the action of the appraiser was erroneous and that some other dutiable value is proper. *Brooks Paper Company* v. *United States*, 40 CCPA 38, 31, C.A.D. 495; *H. S. Dorf & Co., Inc., a/c Joseph H. Meyer Bros.* v. *United States*, 41 CCPA 183, 189, C.A.D. 548. To meet this burden plaintiff must establish every material element of value in strict compliance with the applicable statutory provision: *Kobe Import Co.* v. *United States*, 42 CCPA 194, 198, C.A.D. 593. In the instant case, plaintiff is required to prove all the elements of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, which reads:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The testimony of plaintiff's witness establishes at most that he purchased such or similar merchandise from three firms in Switzerland at the same prices; that he bought in quantities of one thousand to five thousand cases; that he had seen other American purchasers, two

of whom he identified, buying at the same prices, and that there were other factories in Switzerland from which he had received offers. The affidavit of Mr. Bernasconi, except as to the prices at which sales were made to plaintiff, is couched in the language of the statute. Similar affidavits have been held to consist of "ultimate" and not "evidentiary" facts and to be insufficient to establish value in accordance with the statute. *Brooks Paper Company* v. *United States, supra; Kobe Import Co.* v. *United States, supra; United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *Midland Industrial Company* v. *United States*, 57 Cust. Ct. 668, R.D. 11235.

No pricelists or lists of sales have been introduced into evidence in support of the conclusions of the witnesses. There is nothing from which the court can determine the usual wholesale quantities in accordance with the definition in section 402(f)(5) of the Tariff Act of 1930, as amended. No statement has been made that the price varies with the quantity, but the court cannot presume that it does not, *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, 582–583, Reap. Dec. 11056, affirmed *sub nom.*, *United States* v. *Bud Berman Sportswear, Inc.*, 57 Cust. Ct. 733, A.R.D. 211 (appeal 5270 pending). The court cannot determine that the price paid by plaintiff was the price at which such merchandise was sold in the usual wholesale quantities. Nor is the evidence sufficient to establish that the merchandise was in fact freely sold to all purchasers in the ordinary course of trade at that price. Mr. Shoostine was unable to state whether he purchased at prices established by pricelists. He had observed a few others purchasing the merchandise, and Mr. Bernasconi's affidavit states that it was sold to "other customers" in the United States.

Furthermore, the statute provides that export value shall include the cost of all containers and coverings and expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. The invoices here do not include any charge for packing but state "No charges included." Thus there may well be a cost for packing which must be added to the price in order to find export value.

Since plaintiff has failed to establish all the elements of statutory export value for the merchandise, the appraised values remain in full force and effect. *Kobe Import Co.* v. *United States, supra.*

On the record presented, I find as facts:

1. That the merchandise involved herein consists of ladies' and gentlemen's wristwatch cases exported from Switzerland and entered at the port of Boston in November and December 1960.

2. That the ladies' wristwatch cases were invoiced and entered at 1.65 Swiss francs per case, less 5 percent discount, and were appraised at 2.25 Swiss francs per case, less 5 percent discount. That the gentle-

men's wristwatch cases were invoiced and entered at 2.50 Swiss francs per case, less 5 percent discount, and were appraised at 5 Swiss francs per case, less 5 percent discount.

3. That the merchandise does not appear on the Final List published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

4. That the merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

5. That plaintiff claims that export value, as that value is defined in section 402(b) of said tariff act, as amended, is the correct basis for determining the value of the merchandise.

6. That the evidence presented does not establish the price, at the time of exportation to the United States, at which such or similar merchandise was freely sold in the principal markets of Switzerland in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

I conclude as matters of law:

1. That the evidence is insufficient to overcome the presumption of correctness attaching to the appraiser's valuation.

2. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise involved herein.

3. That said values are the appraised values.

Judgment will be entered accordingly.